# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SERGUEI DOSSIOUKOV,
ELENA P. SEREBRIAKOVA,
MSD, a minor child,

                **Plaintiffs,**

    v.                                                 Case No. 07-C-573

**MICHAEL B. MUKASEY,** Attorney
General of the United States, **MICHAEL
CHERTOFF,** Secretary of the Department
of Homeland Security, **EMILIO GONZALEZ,**
Director of the U.S. Citizenship and Immigration
Services, **RUTH A. DOROCHOFF,** District
Director of the U.S. Citizenship and Immigration
Services of the Chicago District Office, **GERALD
HEINAUER,** District Director of USCIS Service
Center, Lincoln, Nebraska, **KAY LEOPOLD,**
Director of the Milwaukee Office U.S. Citizenship
and Immigration Services, **ROBERT S. MUELLER,**
Director of the FBI,

                **Defendants.**

# DECISION AND ORDER

In this mandamus action, the plaintiff, Sergue Dossioukov ("Dossioukov"), seeks to compel the United States Citizenship and Immigration Services (USCIS), to immediately adjudicate his application for an adjustment to permanent resident status.[1] The defendants

---

[1] Dossioukov's wife and son each have pending applications for adjustment of status that are derivative of Dossioukov's application and, therefore, are listed as the other plaintiffs in this action.

have moved to dismiss this action for lack of subject matter jurisdiction. For the following reasons, the Court will grant the defendants' motion.

## BACKGROUND

In February 2004, Dossioukov filed a Form I-485, which is an application for an adjustment of status. Prior to adjudicating a Form I-485, the FBI must first conduct certain security checks. All of Dossioukov's security checks have been completed, except for a name-check. (Heinauer Decl. ¶¶ 15-17.)

The FBI's National Name Check Program (NNCP) is responsible for disseminating information from the Central Records System (CRS) in response to requests from federal agencies, congressional committees, the federal judiciary, friendly foreign intelligence agencies, and state criminal justice agencies. (Cannon Decl. ¶ 4.) Many of these agencies seek background information on individuals before bestowing a privilege – whether that privilege is government employment, a security clearance, attendance at a White House function, admission to the bar, or the issuance of a visa or a green card. (*Id.*) The NNCP also supports the FBI's counterintelligence, counterterrorism, and homeland security efforts. (*Id.*)

Within the CRS is a complete index to 99.2 million investigative and administrative case records. (*Id.* at ¶ 9(c).) When the FBI searches an alien's name, the name is electronically checked against this index. (*Id.* at ¶ 11.) The searches seek all instances of the individual's name and date of birth. (*Id.*) When the FBI check locates a similar name, or the

date of birth is similar to that of past FBI investigations, the FBI file must be retrieved and manually reviewed. (*Id.* at ¶¶ 12, 14.)

Because of heightened national security concerns, the USCIS reviewed its procedures in November 2002. (*Id.* at ¶ 21.) It determined that a more detailed clearance procedure be required to protect the people and interests of the United States more effectively. (*Id.*) One of the procedures it identified was the FBI's name-check clearance process. (*Id.*) Before November 2002, only those "main" files that could be positively identified with an individual were considered responsive to the immigration authorities' name-check requests. (*Id.*) However, because that approach ran the risk of missing a match to a possible "derogatory record," the FBI altered its search criteria to include "reference" files as well. (*Id.*) The FBI, therefore, is now required to review many more files in response to each individual background check request. (*Id.*)

In December 2002 and January 2003, the USCIS resubmitted 2.7 million name-check requests to the FBI for background investigations of all individuals with then-pending applications for immigration benefits. (*Id.* at ¶ 22.) Approximately 440,000 of the responses to the resubmitted name-check requests indicate that the FBI may have information related to those individuals. (*Id.*) These 444,000 requests have allegedly delayed the processing of the regular submissions of the USCIS. (*Id.* at ¶ 23.) The FBI processes name-check requests on a first-in, first-out basis, and Dossioukov's applications are being processed in accordance with normal protocol. (*Id.*; Heinauer Decl. ¶ 27.)

-3-

## DISCUSSION

Dossioukov requests that the Court issue a writ of mandamus that would force the USCIS to immediately adjudicate his change of status application that has been pending for nearly four years. The defendants argue that this Court has no jurisdiction to consider such a request.

The Immigration and Nationality Act precludes courts from reviewing discretionary decisions or actions of the USCIS:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review –
>
> (i) any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] . . . or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .
>
> 8 U.S.C. § 1252(a)(2)(B)

The question this case presents is whether this provision removes jurisdiction from courts to review the pace at which the USCIS processes its change of status applications. The parties have not presented any federal appellate court cases directly addressing this question, and the court's research has not revealed any such cases either.[2] The district courts who have

---

[2] Dossioukov cites *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002), but *Iddir* is distinguishable from the present case. At issue in *Iddir* were applications for permanent resident visas through the lottery program, which the INS failed to process before the statutory time period expired. The court held it had jurisdiction to review the denial because the denial did not constitute a *discretionary* decision, but one the INS had to make because it was not heard within the applicable time period. *See id*. at 498.

-4-

addressed this issue are split on the matter. *Compare, e.g., Bugulu v. Gonzalez*, 490 F.Supp.2d 965, 967 (W.D. Wis. 2007) (holding that courts lacks jurisdiction to review the pace at which the USCIS processes an adjustment status); *Sharif v. Chertoff*, 497 F.Supp.2d 928, 933-34 (N.D. Ill. 2007) (same); *Li v. Chertoff*, 482 F.Supp.2d 1172, 1176-79 (S.D. Cal. 2007) (same); *Safadi v. Howard*, 466 F.Supp.2d 696, 699-701 (E.D. Va. 2006) (same), *with Saleem v. Keisler*, 2007 WL 3132233, at *3 (W.D. Wis. Oct. 26, 2007) (holding that courts have jurisdiction to review whether there is an unreasonable delay in processing an adjustment status); *Fu v. Gonzalez*, 2007 WL 1742376, at *6 (N.D. Cal. May 22, 2007) (same); *Linville v. Barrows*, 489 F.Supp.2d 1278 (W.D. Okla. 2007) (same); *Duan v. Zamberry*, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007) (same).

Section 1252(a)(2)(B)(ii) precludes federal courts from reviewing any decision or action "the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ." The subchapter at issue never explicitly specifies that the Attorney General has discretion to determine the pace of processing applications, so at least one court concluded that the absence of such an explicit provision indicates that section 1252(a)(2)(B)(ii) is inapplicable to a claim of adjudicatory delay. *See Duan*, 2007 WL 626116, at *2. This Court disagrees. While the statute never explicitly gives the Attorney General discretion to determine the pace of processing applications, it does provide that an

---

Unlike in *Iddir*, the USCIS's decision regarding the pace at which it processes its applications is within its discretion. The USCIS, unlike the INS in *Iddir*, has not lost its discretion on how to adjudicate Dossioukov's application. Accordingly, the decision in *Iddir* is inapposite to the case at hand.

-5-

alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). If the Attorney General may decide an adjustment of status application "under such regulations as he may prescribe," it follows that one regulation that the Attorney General may prescribe is the length of time with which the processing of applications occur. The manner by which the USCIS processes its applications is within its discretion.

The heightened national security concerns after the attacks of September 11, 2001, led to a more thorough, and thus more time consuming, review by the FBI and the USCIS. Because that decision is within the discretion given to the Attorney General in section 1255(a), the Court cannot review it.

However, the Attorney General cannot refuse altogether to process an applicant's request for a change of status. *See, e.g., Safadi*, 466 F. Supp.2d at 700-701. Indeed, a delay may be so substantial that it could be tantamount to a refusal to act. That is not the case here. The government submitted evidence, that Dossioukov did not dispute, demonstrating that the USCIS has acted on his application. It sent his application to the FBI for security checks. The FBI has conducted all the requisite security checks except for the name-check review. While the NNCP is conducting a more thorough and time consuming review due to heightened national security concerns, Dossioukov's application is being processed according to normal protocol. The evidence demonstrates, therefore, that the USCIS is not refusing to process his application, but rather is processing it at a pace that is in accord with

-6-

its standard procedures. In the circumstances of this case, therefore, it cannot be said that the delay is tantamount to a refusal to review his claim.

Because the USCIS has discretion over the pace at which it processes its applications, this Court has no jurisdiction over Dossioukov's complaint.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' Motion to Dismiss for Lack of Jurisdiction (Docket No. 7) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 15th day of January, 2008.

BY THE COURT

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**